Dear Mr. Savoie:
On behalf of the Louisiana Gene Therapy Research Consortium, Inc. (Consortium), an independent non-profit entity formed by the LSU Health Sciences Center (LSU) and the Tulane University Health Sciences Center (Tulane), you have requested our opinion on the following issues:
 1. The Consortium intends to construct highly specialized, FDA-certified laboratory facilities, known as Good Management Practices (GMP) laboratories, which are required for the sophisticated gene therapy research to be undertaken by the Consortium. Technical and complex FDA regulations specify the design, construction and operational criteria of a GMP lab. The FDA regulations' intricacies regarding design and construction of GMP labs call for the use of professionals with uncommon skill sets. For instance, we understand that only a small number of architectural and design firms in the United States have the type of experience necessary to design the GMP labs in accordance with FDA regulation and properly manage the construction so as to ensure FDA validation at project completion. It has been suggested that utilizing contractors with prior GMP lab construction experience minimizes the risks of construction deficiencies, time delays, increased construction costs and, most significantly, non-validation by the FDA if the labs are not built to FDA specifications. It is also suggested that there is a general lack of experience in such projects by most architectural and construction firms who may otherwise bid on public projects. For these reasons, the Consortium desires to select and engage (a) an architect with prior experience in designing and managing the construction of the specialized GMP labs, (b) a contractor who is qualified to construct the GMP labs in accordance with the FDA regulations and, (c) a special consultant that will advise the Consortium with respect to the FDA inspection and certification of the GMP labs during and following construction of the labs. Can the Consortium proceed to engage such an architect, a contractor and a consultant without complying with applicable provisions of the Louisiana Public Bid Law?
 2. Can the Consortium, using public funds obtained pursuant to a cooperative endeavor agreement with the State, provide for the renovation of facilities (i.e., laboratory and related space) which are located on private property, whereby the Consortium, pursuant to an agreement with the private landowner, will retain ownership of all such improvements? As an example, the consortium proposes to design, construct, and equip a stem cell pilot production capability laboratory at Tulane with state capital outlay funds. Through cooperative endeavor agreements between the Consortium, Tulane and LSU, the Consortium will continue to own the improvements and equipment; and access to and use of the laboratory facilities and equipment located on Tulane's property will be shared equally by LSU and Tulane.
As you are aware, the Consortium is a party to two Cooperative Endeavor Agreements. The first is with your agency, the Board of Regents (Coop I), and the second is with the State of Louisiana, through the Office of Facility Planning and Control, and the Louisiana Department of Economic Development (Coop II). These Cooperative Endeavors are contracts through which the Consortium will access the public funds and support services to be provided for its authorized endeavors and each provides some guidance in responding to the issues which you raise.
Article XX of Coop I contains provisions requiring bids for services, materials and other expenses "whenever practically possible". Since the Scope of Services set forth in Article III of Coop I does not relate to the issues which you have raised, it is not relevant to this inquiry.
Coop II contains the following provisions regarding procurement:
 PUBLIC BID LAWS: The Consortium will solicit bids for the services, labor and materials needed to construct said Project in accordance with the public bid laws of the State, including, but not limited to, R.S. 38:2211, et seq., applicable to political subdivisions of the State. The consortium will also keep a procurement file relative to the necessary acquisition of services, labor and materials needed to complete said Project which will be subject to review by the State at any time.
Your attorneys, Adams and Reese, have provided us with assurances that future Cooperative Endeavor Agreements relating to this project will contain provisions corresponding to those set forth above.
Your first question relates to the Public Bid Law provision set forth above; you ask whether the Consortium can engage an architect, a contractor, and a consultant without complying with the Louisiana Public Bid Law. Although the Consortium is a private non-profit corporation and not a political subdivision of the state, the above quoted provision from the Cooperative Endeavor Agreement makes public bid requirements of the law applicable to the Consortium as though it were a political subdivision. There is no provision in the Public Bid Law, R.S. 38:2211,et seq. or elsewhere in state statutes which requires political subdivisions of the State to contract for architectural or consulting services pursuant to a bid or any other competitive process. While there are such requirements in Title 39 of the Revised Statutes applicable to State entities, there is no such requirement for political subdivisions. Since the above provision seeks to make applicable to the Consortium only "the public bid laws of the State . . . . applicable to political subdivisions of the State", the result is that there is no applicable public bid law with regard to these contracts for services, and therefore no requirement for the Consortium to use a competitive process for such contracts.
However, with regard to the contract for construction of the GMP lab, R.S. 38:2211, et seq., requires political subdivisions to seek sealed bids from licensed and responsible contractors for public works. R.S.38:2212A(1)(a). Likewise, the annual Capital Outlay Act which provides funding for this project requires compliance with the Public Bid Law. This would be applicable to the contract for construction of the proposed GMP labs.
Your second question regarding erection of Consortium-owned facilities on land owned by others is addressed in Coop II, as follows:
 OWNERSHIP OF PROPERTY: The Consortium hereby covenants that it owns, will acquire title to, or obtain permanent easements for the property upon which the Project is to be located and that it shall not, while any of the Project Bonds remain outstanding, transfer, convey, sell, mortgage, assign or otherwise alienate its ownership or easement rights in the land and appurtenances which constitute the Project.
This makes clear that it is not enough for the Consortium to own the improvements as you propose in your question, but that it must also own the land upon which those improvements are made or "obtain permanent easements" for the land where those improvements will be situated. In correspondence to the writer subsequent to your Opinion Request, we have been advised by Adams and Reese that the Cooperative Endeavor agreement under which this project will proceed will contain language corresponding to that quoted above and that the Consortium will obtain a "permanent easement" from the owner, Tulane, for erection of the GMP lab facility. Based on these assurances and contingent upon the execution of such documents, we can state that the GMP labs to be constructed by the Consortium with State capital outlay funds previously authorized may be built on land not owned by the Consortium but committed to the project by "permanent easement." It will be incumbent upon counsel for the Consortium to obtain a servitude or other agreement between Tulane and the Consortium which will constitute a "permanent easement".
This opinion is based wholly on the information provided in your request and subsequently by your attorneys. Any change in the facts or documentation could result in a different outcome.
I trust that this adequately answers your questions regarding contractual requirements of the Consortium. Please let me know if we can be of further assistance to you in this matter.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 By: _______________________ GLENN R. DUCOTE
Assistant Attorney General Chief, Public Finance Contracts Section
RPI/GRD